# United States District Court
# District of Columbia

UNITED STATES OF AMERICA,

-*v*-

DANIEL CHRISTMANN,

*Defendant.*

Docket No. 1:21-CR-00502-CKK

<u>**SENTENCING MEMORANDUM FOR DEFENDANT
DANIEL CHRISTMANN**</u>

Steven A. Metcalf II, Esq.
**Metcalf & Metcalf, P.C.**
99 Park Avenue, Suite 810
New York, NY 10016
*Office* 646.253.0514
*Fax* 646.219.2012
metcalflawnyc@gmail.com

*Attorney for Defendant Daniel
Christmann*

# **TABLE OF CONTENTS**

I.     PRELIMINARY
       STATEMENT…………………………..………..………………………     3

II.    FACTUAL BACKGROUND …………….…………………………….     4

III.   LAW AND ARGUMENT ..............................................................     6

IV.    AN INDIVIDUALIZED ASSESSMENT OF MR. CHRISTMANN AND
       HIS PERSONAL  CHARACTERISTICS WARRANTS A NON-JAIL
       SENTENCE………………………………………………………………     **7**

V.     THE SERIOUSNESS OF THE OFFENSE, RESPECT FOR
       THE LAW, AND JUSTPUNISHMENT FOR THE OFFENSE…...……     11

       A.  ADEQUATE DETERRENCE TO FUTURE CRIMINAL CONDUCT………     11

       B.  THE NEED TO AVOID UNWARRANTED SENTENCING DISPARITIES
           UNDER SECTION 3553(A)(6). …………………………………………    13

VI.    CONCLUSION ................................................................................. 16

# I.   <u>PRELIMINARY STATEMENT</u>

The most important task in determining one's prison sentence, and what is just, necessary, not greater than sufficient: is to determine someone's true heart.

A person's true heart is where that person truly resides and where we discover what Justice represents in this case. During sentencing, judges perform a quintessential task constantly and effectively utilizing their own humanity and experience, and that of the person standing before them – ready to be sentenced – and whether such person deserves to be in custody, on probation, or both.

Depending on that person's age, family circumstances, where there are in life on that day – the distinction between days in jail verses probation can make all the difference.

In the matter of Daniel Christmann we respectfully request a probation sentence.

Mr. Christmann has been on pre-trial release for approximately 2 and ½ years, without any instances. The sentencing recommendation from his probation officer highlights how Mr. Christmann has continued in "complying with pretrial supervision." *See* ECF Doc. 53.

Where Mr. Christmann is today, physically, mentally, and emotionally speaks volumes because he has made drastic changes in his life, especially since his arrest in this matter.

A probation sentence would allow Christmann to continue his schooling at St. Joseph's University. Additionally, he can focus on his continued medical treatment, which includes injections in his right knee and right hip. His continued treatment with his doctors has led to the conclusion that an entire meniscus replacement, knee and hip surgeries are inevitable.  In also improving his health, he adopted an emotional support dog, named Ralf. Christmann takes Ralf everywhere with him, where Ralf is already being known in the local coffee shops, and the dog park.

Actions speak much louder than words, where Mr. Christmann took a plea, accepted responsibility, has complied with all pretrial requests for more than two years, and stands ready for sentencing on this case.  Because he has a good heart, a strong mind, he has taken various steps to better himself since his arrest in this matter. He is without question worthy of a second chance, a chance to put this matter behind him without going to jail.

## II.    FACTUAL BACKGROUND

On January 2, 2018, Mr. Christmann was on a job site in Brooklyn, New York as a project manager. On that day Christmann already had completed five years of training and an apprenticeship, where in less than two more years he stood to become a licensed Master Plumber in the city of New York. Becoming a Master Plumber in NYC was Christmann's main goal and focus. He put a substantial amount of time

and energy into his passion.  Not only did Christmann stand to substantially increase his earning capacity, but he was on the road to achieving his greatest goal.

Unfortunately, on that morning – all of his goals, passions, and ability to obtain his Master Pluming license were suddenly stripped from under him.  Between the surgeries, and recovering from such injuries, Christmann was unable to finalize the necessary last two years to obtain his license. Such NYC license requires that the seven years of apprenticeship be completed in a specified time period. Mr. Christmann's injury made it impossible for him to complete his final two years within the required time frame.

While out of work, and on workers' compensation, Christmann's life spiraled out of control. He had to file a lawsuit for his personal injuries, which remains pending to this day. In speaking with his personal injury attorney it was conveyed that such personal injury case is currently ready for trial. The personal injury case is on the Kings County Supreme court calendar this month. (*See* Attorney Shapiro Letter dated 1/10/2024 attached as **Exhibit E**).

Since his arrest, Christmann has made great changes in his life. He stays focused on his medical treatment, including obtaining a strict diet. He is also someone who, while being in school, is suffering with a disability stemming from a physical injury that he incurred due to a serious fall.

Defendant Christmann is a currently enrolled at St. Joseph's University in Brooklyn, New York. Dan is a focused student pursuing his journalism degree. To date, Mr. Christmann has completed 34 credits at St. Joseph's University and has a GPA of 3.46. Overall, he has completed 76 college credits.

His next semester begins the week of January 15, 2024. In three more semesters, he is set to receive a B.A. in journalism.

### III.   LAW AND ARGUMENT

Defendant Christmann requests a probation sentence to continue to maintain his medical care, health, personal injury lawsuit, his courses and GPA at St. Joseph's University, and caring for his support dog, Ralf. Given the lack of criminal history, his age, and medical condition, recidivism is unlikely. Christmann is not recommended for sentencing.

In analyzing the 3553(a) factors, the Court has the discretion to fashion the sentence it deems is just so long as it is no greater than necessary to accomplish the purposes of the sentencing statute. We respectfully submit that the recommendation of both the defense and Probation is correct and that the 3553(a) factors strongly support a non-incarceratory sentence, which is no greater than necessary to accomplish the purposes of the sentencing statute.

## IV.   AN INDIVIDUALIZED ASSESSMENT OF MR. CHRISTMANN AND HIS PERSONAL CHARACTERISTICS WARRANTS A PROBATION SENTENCE

In determining the particular sentence to be imposed, 18 U.S.C. § 3553(a)(1) directs the Court to consider the "history and characteristics of the defendant." This ensures "that the punishment will suit not merely the offense but the individual defendant." *Pepper v. United States*, 562 U.S. 476, 488 (2011) (citation omitted). Just as it is necessary for the Court to understand "what set a defendant upon [an] illegal course". *Id.* at 332. Moreover, its "a court's duty is always to sentence the defendant as [s]he stands before the court on the day of sentencing." *Pepper v. United States*, 562 U.S. 476, 492 (2011) (*citing United States v. Bryson*, 229 F.3d 425, 426 (2d Cir. 2000) (*per curiam*)).

Section 3553(a) requires a sentencing court to consider additional factors when determining its sentence.  These additional factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the range established by the Sentencing Guidelines, any pertinent policy statement from the Sentencing Commission, the need to avoid unwarranted sentencing disparities and the need to provide restitution to any victims. Consideration of these additional factors supports a probation sentence in this case.

In *Booker*, the Supreme Court held that mandatory application of the Sentencing Guidelines violated a defendant's Sixth Amendment rights. *United*

*States v. Booker*, 543 U.S. 220 (2005); *See Kimbrough v. United States*, 552 U.S. 85, 100-01 (2007); *United States v. Cavera*, 550 F.3d 180, 187 (2d Cir. 2008). Essentially, the rigid framework of the Guidelines was replaced with a process that makes the Guidelines merely advisory, and that requires judges to consider the factors specified in 18 U.S.C. § 3553(a) to determine a sentence that is "sufficient, but not greater than necessary" to accomplish the goals of sentencing. *Kimbrough*, 552 U.S. at 101.

The post *Booker* goals include the need for the sentence imposed to:

(1)   reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense;

(2)   afford adequate deterrence to criminal conduct;

(3)   protect the public from further crimes of the defendant; and

(4)   provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2).

With this framework in mind, § 3553(a) provides for variances from the advisory Guidelines range based on, *inter alia*, "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1); *Kimbrough*, 552 U.S. at 108-10.

Additionally, *post-Booker* decisions have specified the procedure a district court must follow in sentencing, where the Guidelines serve as only a "starting point" in determining a sentence, and a sentencing court "may not presume that the Guidelines range is reasonable." *Gall v. United States*, 552 U.S. 38, 50 (2007). All of the sentencing factors enumerated under 18 U.S.C. § 3553(a) must be considered for the District Court to "make an individualized assessment based on the facts presented." *Gall*, 522 U.S. at 50; *see also United States v. Rigas*, 583 F.3d 108, 116 (2d Cir. 2009).

Put differently, courts should utilize the "most up-to-date picture" of a defendant's "history and characteristics", and one much more detailed than the PSR, which seems to not even confirm who Christmann is, and how dramatically he has changed his life around for the better. *Pepper*, 562 U.S. at 492.

For example, in *Pepper*, a defendant was convicted of narcotics trafficking, sentenced, and later resentenced as a result of other proceedings. By the time of his resentencing, the defendant "had been drug free for nearly five years, had attended college and achieved high grades, was a top employee at his job slated for a promotion, had reestablished a relationship with his father, and was married and supporting his wife's daughter." *Pepper*, 562 U.S. at 492. The Supreme Court emphasized that the District Court should have applied the § 3553(a) factors to the man standing before it on resentencing, rather than ending the analysis of his "history

and characteristics" at the time of the first sentencing. *Id.; United States v. Gonzales*, 163 F. Supp. 3d 1078, 1126 (D.N.M.), *aff'd*, 844 F.3d 929 (10th Cir. 2016) ("a court may consider 'post offense rehabilitative efforts' in deciding whether to grant" a variance); *United States v. Rutherford*, 323 F. Supp. 2d 911, 914 (E.D. Wis. 2004) (same).

Here, if Mr. Christmann is sentenced to jail time, he will have to withdraw from his college classes, faces issues with his civil litigation trial that is scheduled, and has to find a place for his dog to live. Such will adversely affect his steady progress. His medical situation requires daily attention, including a strict diet based on Christmann's size and weight. He sticks to his regiment daily. Part of his progress certainly includes his support dog, Ralf's companionship.

We respectfully submit that each of these facts—Mr. Christmann's commitment to family, education, and therapy—supports the imposition of a non-incarceratory sentence.

We ask this Court to take a look at each of these factors, as a whole, in making its determination.  Christmann will stand before this court a changed man, who is taking every step he can to better himself since his injury, and arrest in this case. Having represented and known him for the better part of two years – I certainly see the changes he has made for self-improvement, and its these "history and characteristics" we ask to be the focal point.

## V.    THE SERIOUSNESS OF THE OFFENSE, RESPECT FOR THE LAW, AND JUST PUNISHMENT FOR THE OFFENSE.

Probation of one year and a non-incarceratory sentence is appropriate and sufficient to reflect the seriousness of the offense of which Mr. Christmann was convicted and to promote respect for the law and to provide just punishment.  As Mr. Christmann was only in the building for two and a half minutes and did not harm anyone, a sentence of an overly lengthy incarceration may undercut respect for the law.  *Gall v United States*, 552 U.S. 38, 54 (2007) (highlighting "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing").

### A.  ADEQUATE DETERRENCE TO FUTURE CRIMINAL CONDUCT.

Imposing a sentence of time served in this case would have little, if any, bearing on deterrence.  Empirical research shows no relationship between sentence length and deterrence.  In a pre-Guideline study of specific deterrence, no difference in deterrence was found as a result of sentence severity, including between probation and imprisonment.  *See* ANDREW VON HIRSCH, *et al.*, *Criminal Deterrence and Sentence Severity: An Analysis of Recent Research* (1999) (concluding "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance," and that "the studies reviewed do not provide a basis for

inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects.").

"There is generally no significant association between perceptions of punishment levels and actual levels . . . implying that increases in punishment levels do not routinely reduce crime through general deterrence mechanisms." GARY KLECK, *et al.*, *The Missing Link in General Deterrence Theory*, 43 Criminology 623 (2005).

In addition to the ineffectiveness of imprisonment on deterrence, an over-emphasis on general deterrence poses the ethical problem of punishing one person to promote deterrence of others. "Judicial punishment can never be administered merely as a means for promoting another good either with regard to the criminal himself or to civil society, but must in all cases be imposed only because the individual on whom it is inflicted has committed a crime.  For one man ought never to be dealt with merely as a means subservient to the purpose of another." IMMANUEL KANT, *The Science of Right*, 195 (W. Hastie trans., 1790).

General deterrence simply is not a good reason for a lengthy prison term, or any in custody time frame if such is not necessary.

Through dedication, focusing on his studies, the love and support he gets from his support animal, Daniel Christmann is sure to turn his life around in the right

direction. He remains diligent on the preparation for his injury lawsuit, and his medical treatment is a vital factor for success in such a case.

## B. THE NEED TO AVOID UNWARRANTED SENTENCING DISPARITIES UNDER SECTION 3553(A)(6).

A probation sentence would not cause sentencing disparities between Mr. Christmann and similarly situated individuals. Sentences of probation have been imposed on various January 6th defendants, both those charged with felonies, and those who have pleaded guilty to Picketing, Demonstrating and Parading. *See United States v. Morgan-Lloyd*, 21-CR-00164 (RCL) (sentencing 36 months' probation, 120 hours' community service, and $500 restitution after pleading guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G)); *United States v. Sizer*, 22-CR-00376 (JEB) (sentencing Defendant to 1 year of probation after pleading guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G)); *United States v. Rosa*, 21-CR-00068 (TNM) (sentencing 12 months' probation, 100 hours' community service, and $500 restitution after pleading guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G)); *See also United States v. Cordon*, 21-CR-00269 (TNM) (sentencing 60 days  probation, $4,000.00 fine, and $500 restitution after pleading guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G)); *United States v. Wrigley*, 21-CR-00042 (ABJ) (sentencing 18 months' probation, 60 hours' community service, and

$2,000.00 fine after pleading guilty to one count of violating 40 U.S.C. §
5104(e)(2)(G)).[1]

Similarly, in regard to January 6th there are various cases, where defendants
convicted 18 U.S.C. § 1752(a)(1) were also sentenced to probation. *See United
States v Pert*, 21-CR-00139 (TNM) (sentencing Defendant to 24 months probation,
100 hours' community service, and $500 restitution who was violation of 18 U.S.C.
§ 1752(a)(1) after Defendant celebrated and boasted to stopping the vote,); *See also
United States v. Witcher*, 21-CR-00235(RC) (sentencing Defendant to 12 months'
probation-60 hours' community service-$500 restitution, who was in violation of 18
U.S.C. § 1752(a)(1) after Defendant was seen in multiple parts of the building
screaming "Our House" and yelling at Police Officers inside the building); *United
States v. Nalley*, 21-CR-00016 (DLF)(sentencing Defendant 24 months' probation-
60 hours' community service – $500 restitution, who was in violation 18 U.S.C.
1752(a)(1) when Defendant was in the building for 40 minutes boasting about

---

[1] In addition, the following cases are worth mention: *United States v. Doyle*, 21-CR-00324 (TNM)
(sentencing 60 days probation, $3,000.00 fine, $500 restitution  after pleading guilty to one count
of violating 40 U.S.C. § 5104(e)(2)(G), and being in building for 25 minutes protesting); *United
States v. Blauser*, 21-CR-00621 (CRC) (sentencing defendant to $ 500.00 fine, $500 restitution
after pleading guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G), and defendant broke
through police lines and were involved in skirmishes with police in building); *United States v.
Genco*, 22-CR-00062 (JMC) (sentencing 12 months' probation, 60 hours' community service,
$500 restitution  after pleading guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G), and
helping obliterate the policed perimeter and signage that would have warned others); *United States
v. Cantrell*, 22-CR-00121 (TNM) (sentencing 3 months' probation, 40 hours' community service,
$500 restitution after pleading guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G), and
being on Capital Grounds for 3 hours, one of the first in the building and in the building multiple
times).

disrupting the election); *United States v Cudd*, 21-CR-00068(TNM) (sentencing Defendant to 60 days' probation, $5,000.00 fine, and $500 restitution, who was in violation 18 U.S.C. 1752(a)(1) when Defendant boasted about being a revolutionary and remained in the building for 20 minutes); *United States v Ayres*, 21-CR-00156 (JDB) (sentencing Defendant to 24 months' probation, 100 hours of community service, and $500 restitution, who was in violation 18 U.S.C. 1752(a)(1) when Defendant remained posting videos from the building for hours including after 6pm curfew); *United States v Brooks*, 22-CR-00018 (JMC)(sentencing Defendant to 12 months' probation, 60 hours of community service, $500 restitution, who was in violation of 18 U.S.C. § 1752(a)(1) when Defendant had tactical gear and was rioting for over 2 hours inside).

Overall, there are approximately 100 picketing and parading cases from January 6th that resulted in probation only. Considering that Christmann was only filming in the Capitol and for less than three minutes, we ask that this Court place Christmann in this category. Daniel has an extensive background in Journalism, and did not defy any direct orders and left the building after taking a short video from the inside looking out. Daniel did not yell at or impede police officers or slow them down in anyway.

## VI.   CONCLUSION AND SENTENCING
## <u>RECOMMENDATION</u>

For the reasons set forth above, it is respectfully prayed that this Court impose upon Daniel Christmann a non-incarceratory, probation sentence through implementation of the PSR recommended sentence and commensurate with this sentencing application.

*Steven A. Metcalf, Esq.      /s/*
_____
STEVEN A. METCALF II, ESQ.
**Metcalf & Metcalf, P.C.**
99 Park Avenue, Suite 810
New York, NY 10016
*Office* 646.253.0514
*Fax* 646.219.2012
*Attorneys for Defendant Daniel Christmann*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the instant Motion was served via ECF this 10th day of January, 2024 on all counsel of record.

/s/ *Steven A. Metcalf II*

_____

**STEVEN A. METCALF II, ESQ.**